In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO.  09-14-00230-CV

IN RE COMMITMENT OF MARTIN GUADALUPE LUJAN

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 13-10-10750 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to civilly commit Martin Guadalupe Lujan (Lujan) as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found Lujan suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003 (West Supp. 2014). The trial court entered a final judgment and an order of civil commitment under the SVP statute.

Lujan raises four issues on appeal. In his first two issues, he argues that the evidence is legally and factually insufficient to support a finding that he has a

behavioral abnormality. In his third issue, he argues that the trial court erred in denying him assistance of counsel at a post-petition psychiatric examination. And in his fourth issue, he argues that this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 Tex. App. LEXIS 6974 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.), renders Chapter 841 unconstitutional. We overrule all of his issues and affirm the judgment of the trial court.

## THE SVP STATUTE

Under the SVP statute, the State bears the burden of proving beyond a reasonable doubt that the person it seeks to commit for treatment is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062 (West 2010). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West Supp. 2014). The statute defines "'[b]ehavioral abnormality'" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). Previously, we have stated that "[a] condition which affects either emotional capacity or volitional capacity to the

extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

UNDERLYING FACTS

Lujan was convicted in May 2009 on three counts of indecency with a child by sexual contact, each a second degree felony. His victims were D.L., L.T., and A.B. At the time the conduct occurred, A.B. was about nine or ten years old, D.L. was about ten years old, and L.T. was about thirteen years old. Lujan pleaded guilty to all three offenses, and the court sentenced him to five years of confinement for each offense, with the sentences to run concurrently. D.L. and A.B. are Lujan's nieces, and he was convicted for offenses against them that occurred in 2002 and 2004, respectively. L.T. is not related to Lujan, and he was convicted of an offense against L.T. that occurred in 2007. At the time of the civil commitment trial, Lujan was serving his concurrent sentences for his offenses. Lujan was previously convicted in 1991 for a second degree felony sexual assault against C.L., a girl who was about fourteen years old at the time of the sexual assault. Lujan also pleaded guilty to the offense against C.L., for which he served eight years in prison.

In his testimony at the civil commitment trial, Lujan denied he used any force in the 1991 sexual assault against C.L., and he claimed he had consensual sex with her, although he admitted that C.L. was only about fourteen years old at the time of the assault. He denied any sexual contact with D.L., L.T., and A.B., and he stated that he pleaded guilty to the offenses against each of them "under duress."

When asked if he was a sex offender, Lujan replied "No . . . . I'm a registered sex offender[.]" He testified that he had never had sex offender treatment, that it was never offered to him, and that he did not believe he had any issues that needed to be addressed in treatment. Lujan testified that, if offered sex offender treatment, he would take it because "I believe anything could be beneficial to me, you, them, anybody. . . . I mean, the more you learn, the better off you are. Isn't that the old saying, knowledge is power?" He also stated "if it would help me get out earlier, I would take one." Lujan testified that he currently had no sex drive, and he did not believe he would harm any other girls in the future. When asked about his plan as to how he would avoid reoffending after his release from prison, Lujan said he planned to stay away from children because "I probably have a less chance [sic] of being accused of something I didn't do again." And when asked why the jury should believe he would not go back to prison for another sex offense, Lujan replied "[b]ecause I didn't do the last three." He stated that, upon

4

his release from prison, he had no plan to stay away from his own children or grandchildren.

Lujan also testified that he started drinking alcohol at age sixteen, he started using marijuana at age seventeen, and he admits he used LSD once. He agreed he was charged with and pleaded guilty to driving while intoxicated; however, he denied that he ever had a problem with substance abuse. He agreed that he got a major disciplinary in prison for assaulting someone, and he received solitary confinement for a year and three months; but he explained that he was defending himself. When asked if he was ashamed of his criminal history, he responded "I am ashamed that I plea bargained the five, [y]es . . . ."

Dr. Michael Arambula testified as an expert for the State. Dr. Arambula is a medical doctor, board-certified in general and forensic psychiatry, who has evaluated prisoners for behavioral abnormality purposes for over ten years. He testified that in assessing Lujan, he used the methodology followed by individuals trained in forensics who perform this kind of evaluation in Texas. Dr. Arambula interviewed Lujan for about two-and-a-half hours, and he also reviewed various records, including investigative records and details of Lujan's offenses, prison records, victim statements, Lujan's deposition, and an evaluation by a psychologist. In Dr. Arambula's opinion, Lujan has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Arambula diagnosed Lujan with sexual deviance, which he testified is "the same in the DSM [Diagnostic and Statistical Manual] as a paraphilia with features of pedophilia and with features of sadism." He also diagnosed Lujan as having "a personality disorder with some antisocial features[.]" Explaining the antisocial features of Lujan's personality, Arambula described Lujan as "callous" and lacking responsibility. Arambula further explained that he did not diagnose Lujan with a specific personality disorder but rather a "nondescript personality disorder," and he described Lujan as "very, very obsessive compulsive" and "rather paranoid[.]"

Dr. Arambula testified that two big issues he focuses on in determining whether someone has a behavioral abnormality are "how antisocial somebody is, because that's a big risk factor, and also how serious the sexual deviance is." Arambula regarded Lujan's sexual deviance as "pretty serious[]" based on the number of his victims, which in Arambula's opinion, "raises the risk for recidivism." He qualified Lujan's sexual deviance as having sadistic features based on the details of the assault against C.L., especially the number of her contusions, internal and external lacerations on her genitalia, blood at the scene, on her undergarments, and pooled inside her, and her report of a struggle. Dr. Arambula also noted that Lujan expressed no remorse or guilt concerning the offense against C.L., and Arambula regarded this as a significant part of Lujan's sexual deviance

6

"because there was so much physical harm that he did to her." Dr. Arambula also observed that Lujan expressed no remorse or guilt as to his other victims.

Dr. Arambula stated that the following factors increase Lujan's risk of sexual re-offense: his non-sex-related criminal offenses, the fact that Lujan continued to commit sex offenses after having been incarcerated for a sex offense, multiple victims and multiple incidents, Lujan's age, Lujan's lack of sex offender treatment, Lujan's denial of the need for treatment, and Lujan's lack of insight into what triggers Lujan to offend. Dr. Arambula reported that Lujan's score on the Static-99R, an actuarial used for evaluating the risk of reoffending and scored by a non-testifying psychologist, was a three, which indicated a "low-moderate" risk of re-offense; however, Dr. Arambula believed Lujan's actual risk was higher, "more moderate to moderate-high." According to Dr. Arambula, sexual deviance is a chronic condition. Dr. Arambula noted some positive factors for Lujan, including his stable employment history, the fact that he is "not very antisocial," his good support system and family involvement, and the lack of significant substance abuse issues.

On cross examination, Lujan's attorney asked Dr. Arambula about his diagnoses, and Arambula explained that:

> [Lujan] has sexual deviance with some features of pedophilia and sadism. I could say alternatively that it is paraphilia, not otherwise specified, with features of pedophilia and sadism. That's per the

7

DSM, by the way. . . . then he has some personality pathology, but not to the degree of a specific personality disorder.

Dr. Arambula further stated that although the Diagnostic and Statistical Manual (DSM) does not include a diagnosis of sexual deviance, the literature supports the diagnosis. When Lujan's attorney asked what "objective, empirical evidence" Dr. Arambula had for concluding that Lujan has a disease, the doctor replied as follows:

[F]irst of all, it's based on the literature that was then passed on to me during my training. And subsequent to that there have been other studies that have been published. They all describe different diseases, disease types of sexual deviance and paraphilias. In his case, as I stated, he has two. One has some features of sadism and the other has features of pedophilia.

The defense did not call any expert witnesses at the civil commitment trial.

LEGAL AND FACTUAL SUFFICIENCY

In his first issue, Lujan argues that the evidence is legally insufficient to support a finding that Lujan has a behavioral abnormality. And in his second issue, he argues the evidence is factually insufficient to support a finding that he has a behavioral abnormality.

*A. Standard of Review.*

In SVP cases, the State must prove the elements of its case beyond a reasonable doubt. *See* Tex. Health & Safety Code Ann. § 841.062(a). Because the statute places upon the State the burden of proof employed in criminal law, this

8

Court has adopted the appellate standard of review in criminal cases for legal sufficiency of the evidence. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In a legal sufficiency review, this court reviews all of the evidence in a light most favorable to the verdict." *Id*.

We must determine if a rational factfinder could have found, beyond a reasonable doubt, that Lujan is a sexually violent predator. Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a), 841.062. To prevail on his legal sufficiency issue, Lujan is required to demonstrate that no evidence supports the jury's finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *In re Commitment of Alvarado*, No. 09-13-00217-CV, 2014 Tex. App. LEXIS 3343, at *16 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.); *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). "[W]hether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012), *cert. denied*, 133 S. Ct. 2746 (2013). We defer to the jury on matters of weight and credibility of the evidence in a challenge to legal sufficiency. *In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied) (citing *Jackson*, 443 U.S. at 319). When reviewing the factual sufficiency of the evidence in a civil case where

9

the burden of proof is beyond a reasonable doubt, we weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *See In re Commitment of Myers*, 350 S.W.3d 122, 130 (Tex. App.—Beaumont 2011, pet. denied).

*B. Analysis.*

Lujan argues that the evidence in this case is legally insufficient because "[t]here is no such DSM-IV diagnosis, like Arambula's, of 'paraphilia NOS with features of pedophilia and sadism[,]'" and because Dr. Arambula's opinion is "based almost entirely on uncross-examined hearsay which is inherently unreliable." To prevail on his legal sufficiency challenged, Lujan must show that the evidence offers no basis to support the jury's finding.

Opinion testimony that is wholly conclusory or speculative amounts to no evidence "because it does not tend to make the existence of a material fact 'more probable or less probable.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (internal citation omitted)). Nevertheless, "when a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *Pollock*, 284 S.W.3d at 818. "But if no basis for the opinion is offered, or the basis offered

10

provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id.*

Lujan's attorney cross-examined Dr. Arambula at the commitment trial concerning the basis for and validity of his diagnoses. The jury, in its role as factfinder, was free to assess the weight and credibility of the testimony on this matter. *Day*, 342 S.W.3d at 207; *Mullens*, 92 S.W.3d at 887 (citing *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994)).

With respect to Lujan's argument on appeal that Dr. Arambula's expert opinion was "based almost entirely on uncross-examined hearsay which is inherently unreliable[,]" the record before us reflects that Dr. Arambula relied upon more than simply hearsay for his opinions, and he explained to the jury the basis for his opinions.

Additionally, we note that during the testimony of Dr. Arambula, as the State's attorney was questioning Dr. Arambula concerning the nature of Lujan's assault against C.L., Lujan's attorney objected to the testimony on the basis of hearsay. The trial court overruled the objection, and Lujan's counsel then requested a running objection and a limiting instruction. The court gave a limiting instruction, which included the admonishment that "[s]uch evidence is admitted only for the purpose of showing the basis of the expert's opinion." The jury charge

11

also instructed the jury that hearsay from records reviewed by an expert was admitted only to show the basis of the expert's opinion.[1]

Our rules of evidence provide that the facts or data on which an expert bases his opinion should be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," but they need not be admissible in evidence. Tex. R. Evid. 703. This Court has previously held that, under Rule 705(a) of the Texas Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data, and may discuss the defendant's prior offenses as part of the basis for the expert's opinion. *See, e.g.*, *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 Tex. App. LEXIS 7212, at \*\*8-10 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *Day*, 342 S.W.3d at 197-99. Rule 705 states that "[i]f otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request." Tex. R. Evid. 705(d). We have previously overruled this same or similar argument regarding the disclosure of information on which the experts relied in forming their opinions. *See In re*

---

[1]We note that Lujan does not argue on appeal, and did not argue to the trial court, that Dr. Arambula is not qualified as an expert witness under Texas Rule of Evidence 702, nor does Lujan argue that Dr. Arambula relied on facts or data other than what experts in the field reasonably rely upon in forming opinions or inferences. The record reflects that Lujan did not object to Dr. Arambula's opinions during the trial on the basis that his opinions were unreliable or wholly conclusory.

*Commitment of Garcia*, No. 09-12-00194-CV, 2013 Tex. App. LEXIS 14986, at **15-17 (Tex. App.—Beaumont Dec. 12, 2013, pet. denied) (mem. op.); *In re Commitment of Reed*, No. 09-11-00484-CV, 2012 Tex. App. LEXIS 2493, at **2-6 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 197-99. We presume the jury followed the court's limiting instructions. *Day*, 342 S.W.3d at 199.

The jury heard Dr. Arambula's testimony that Lujan has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, as well as evidence of Lujan's risk factors, sexual offenses, and diagnoses. The jury also heard Lujan's testimony and admissions concerning his criminal history. The jury was entitled to infer Lujan's current dangerousness from Dr. Arambula's testimony, Lujan's past behavior, and Lujan's own testimony. *See In re Commitment of Lowe*, No. 09-14-00098-CV, 2014 Tex. App. LEXIS 10034, at *5 (Tex. App.—Beaumont Sept. 4, 2014, no pet.) (mem. op.); *In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 Tex. App. LEXIS 6714, at *14 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). As sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Lujan suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Lowe*, 2014 Tex. App. LEXIS 10034, at *6; *see also Wilson*, 2009 Tex. App. LEXIS 6714, at *14; *Mullens*, 92 S.W.3d at 887. Viewing

all of the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Lujan is a sexually violent predator; and the evidence is legally sufficient to support the verdict. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Mullens*, 92 S.W.3d at 885-87. We overrule Lujan's first issue on appeal.

In his second issue, Lujan contends that the evidence is factually insufficient to support the jury's verdict. As stated earlier, in this type of a civil matter we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213; *see also Myers*, 350 S.W.3d at 130.

In addition to the expert's opinions, the jury heard evidence regarding Lujan's criminal history, including his sexual offenses and other criminal conduct. Lujan denied he was actually guilty of the offenses for which he pleaded guilty, and he denied any need for sex offender treatment. Dr. Arambula testified that Lujan suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Arambula diagnosed Lujan with "paraphilia with features of pedophilia and with features of sadism[]" and "a personality disorder with some antisocial features[.]" He also testified that sexual deviance is a chronic condition. Dr. Arambula explained that Lujan has the following risk factors: sexual deviance, a personality disorder with antisocial features, four

14

convictions for sexually violent offenses, lack of insight, lack of sex offender treatment, lack of remorse or guilt, and his denial that he needs sex offender treatment. We conclude that the jury's verdict is supported by factually sufficient evidence. *See Myers*, 350 S.W.3d at 130 (citing *Almaguer*, 117 S.W.3d at 505-06). We see nothing in the record that reflects a risk of injustice that would compel ordering a new trial. We overrule Lujan's second issue on appeal.

RIGHT TO COUNSEL

In his third issue, Lujan contends that the trial court committed reversible error by denying him the right to have his attorney present at the post-petition psychiatric examination conducted by the State's expert prior to trial. Lujan asserts this issue presents a "*de novo* question of statutory construction," and he argues that this Court's ruling in *In re Commitment of Smith*, 422 S.W.3d 802, 806 (Tex. App.—Beaumont 2014, pet. denied), was based solely on a concession by Smith that the SVP statute defines a civil commitment proceeding as a "trial or hearing" and does not appear to encompass a post-petition psychiatric examination. We overrule his third issue.

We have previously stated that neither the SVP statute nor the Fourteenth Amendment requires that counsel be present during a psychiatrist's post-petition examination. *Id.* at 807. In *Smith*, while we noted that Smith made a concession, we did not use the concession as the basis for our holding. *Id.* at 804-07. Rather,

15

our analysis in *Smith* considered numerous factors, including, but not limited to, the following: that Smith had an attorney appointed to him prior to his post-petition exam; that he failed to explain why his counsel could not adequately advise him and protect his rights without being physically present at the examination; that he never identified or complained about any improprieties that occurred in the examination; and that he identified no testimony by the examining psychiatrist that would not have been obtained if his counsel had been present. *Id.* at 805-06. Furthermore, Smith gave no explanation of how he was harmed. *Id.* at 807. Similarly, Lujan had an attorney appointed to him prior to his post-petition exam, Lujan has failed to explain why his counsel could not adequately advise him and protect his right without being physically present at the examination, and he, too, has not identified any testimony by the examining psychiatrist that would not have been obtained if his attorney had been present, nor has he established how he was harmed by not having his attorney attend the examination. We have also subsequently applied our analysis in *Smith* in cases wherein no concession was present in the record. *See In re Commitment of Slama*, 2014 Tex. App. LEXIS 12543, at **2-3 (Tex. App.—Beaumont Nov. 20, 2014, no pet.) (mem. op.); *In re Commitment of Edwards*, 443 S.W.3d 520, 529 (Tex. App.—Beaumont 2014, pet. denied); *In re Commitment of Speed*, No. 09-13-00488-CV, 2014 Tex. App. LEXIS 4444, at *2 (Tex. App.—Beaumont Apr. 24, 2014, pet. denied) (mem. op.);

16

*In re Commitment of Lemmons*, No. 09-13-00346-CV, 2014 Tex. App. LEXIS 3888, at \*\*1-2 (Tex. App.—Beaumont Apr. 10, 2014, pet. denied) (mem. op.); *see also In re Commitment of Wirtz*, No. 14-13-00945-CV, 2014 Tex. App. LEXIS 11931, at \*\*10-16 (Tex. App.—Houston [14th Dist.] Oct. 30, 2014, no pet.). We decline to revisit our previous rulings. For the reasoning discussed in *Smith* and reaffirmed in the foregoing cases, we overrule Lujan's third issue.

## IN RE COMMITMENT OF RICHARD

In his fourth and final issue, Lujan argues that this Court's decision in *In re Commitment of Richard*, 2014 Tex. App. LEXIS 6974, renders Chapter 841 unconstitutional. We recently addressed and rejected this same argument. *See In re Commitment of Lucero*, No. 09-14-00157-CV, 2015 Tex. App. LEXIS 1085 (Tex. App.—Beaumont Feb. 5, 2015, no pet. h.) (mem. op.). For the reasons discussed in *Lucero*, we conclude that Lujan has not shown that the SVP statute is unconstitutional. We overrule Lujan's fourth issue.[2]

Having overruled all of Lujan's issues on appeal, we affirm the trial court's judgment.

---

[2]Lujan complains that the ruling in *Richard* allows the civil commitment of a person who has not been diagnosed with any mental disorder or condition. But the record demonstrates that Dr. Arambula diagnosed Lujan with a mental disorder or condition, finding that he had a sexual deviance (paraphilia with features of pedophilia and sadism), and a personality disorder with antisocial features, and Arambula concluded that Lujan has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

17

AFFIRMED.

                                            _____
                                            LEANNE JOHNSON
                                            Justice


Submitted on December 29, 2014
Opinion Delivered February 19, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.